## City of Richmond, et al. v. Madison National Bank & Trust Company.

(Decided June 22, 1926.)

Appeal from Madison Circuit Court

1. Taxation—Unless Moneyed Capital Comes in Competition with Business of National Bank by Lending Money and Discounting Commercial Paper, it May be Exempted from Taxation (Rev. St. U. S., Section 5219, as amended [U. S. Comp. St. Supp. 1925, section 9784]).—Unless other moneyed capital in hands of individual citizens comes in competition with business of national bank, which is ordinarily receiving of deposits, lending of money, and discounting of commercial paper it is not within Rev. St. U. S., section 5219, as amended (U. S. Comp. St. Supp. 1925, section 9784), prohibiting taxation of national banks at greater rate than is assessed on other moneyed capital in hands of individuals coming into competition with national banks.

2. Taxation—Petition of National Bank to Enjoin Collection of Tax, but Not Alleging that Other Moneyed Capital which was Not Taxed was Used in Competition with Plaintiff Bank, Held Not to State Cause of Action (Rev. St. U. S., Section 5219, as Amended [U. S.

Comp. St. Supp. 1925, Section 9784]).—Petition by national bank against city to enjoin collection of tax, alleging that other individuals and corporations owned investments on which city made no levy for taxation, but which did not allege that their moneyed capital was used in competion with plaintiff bank, held not to state cause of action within Rev. St. U. S., section 5219, as amended (U. S. Comp. St. Supp. 1925, section 9784).

3.  Taxation—Substantial Part of Moneyed Capital Must Come in Real Competition with National Banks in Order to Prohibit its Exemption from State Taxation (Rev. St. U. S. Section 5219, as Amended [U. S. Comp. St. Supp. 1925, Section 9784]).—To come within inhibition of Rev. St. U. S., section 5219 (U. S. Comp. St. Supp. 1925, section 9784), providing that state tax shall not be imposed on national bank at greater rate than is assessed on other moneyed capital in hands of individuals coming in competition with business of national bank, there must be a real competition with national banks, and substantial part of capital must be so used.

G. MURRAY SMITH for appellants.

BURNHAM & GREENLEAF for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

The Madison National Bank & Trust Company brought this suit against the city of Richmond to enjoin it from collecting from it a tax which it had levied of $2.15 on each one hundred dollars' worth of property in the city. By the act of the legislature of May 2, 1917, the intangible property held by individuals other than banks pays a tax of forty cents on each one hundred dollars to the state and is not subject to municipal taxation. The material allegations of the petition to show that the plaintiff was taxed in violation of the act of Congress are in these words:

"Plaintiff states that residing in and doing business and owning property located within the limits of the defendant city, there are approximately two hundred and twenty-five individuals or corporations, other than banks, owning and holding notes, bonds, accounts and other claims to the amount of more than $2,000,000.00, upon which the defendant city has made no levy for taxation for city purposes, and is making no effort to collect from such owners on that species of property any tax at all, and that by such action the city has thereby exempted such

other individuals and corporations from the payment of any tax on intangible personal property as against its efforts and claims, by said levy, to fully tax plaintiff for holding the same kind of property, although the other said persons and corporations hold said intangible property in direct and active competition with the business of the plaintiff's bank, and that such intangibles owned by other persons are of the same character of investment as that represented by the value of plaintiff's capital stock, and the capital stock of all of the national and state banks in the city of Richmond, the total assessed valuation of which is $538,350.00.''

Certain other relief was prayed in the petition on other grounds, which need not be considered, as they are not urged here. The circuit court overruled the defendant's demurrer to the petition. The defendant declined to plead further; judgment was entered in favor of the plaintiff enjoining the collection of the tax; the city appeals.

The act of Congress, sec. 5219 U. S. Revised Statutes. provided as to national banks, ''that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state.'' Under this statute it has been held by the Supreme Court in a number of cases that it was not the intention of Congress to exempt bank shares from taxation because some moneyed capital was exempt, but only to render it impossible for the state in levying such a tax to create and foster an unequal and unfriendly competition by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. Thus it has been held that savings banks are not banking institutions in the commercial sense of the word and may be exempted from a state tax; also that the capital stock of corporations invested in mining claims or other capital that did not appear to come in competition with national banks may be exempted. After these opinions were rendered the case of Merchants' National Bank v. Richmond, 256 U. S. 635, came before the court. In that case the city had taken no proof contradicting the proof for the plaintiff showing that the exempted capital came into competition with national banks; and it was held that the act

was unconstitutional. After this decision was rendered Congress amended the statute so as to make it read thus:

> "In the case of a tax on said shares the tax imposed shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state coming into competition with the business of national banks: Provided, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investments not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section."

Referring to this enactment in First National Bank v. Anderson, U. S. Advanced Sheets, February 1, 1926, p. 171, the court said:

> "The defendants say that this re-enactment was intended as a legislative interpretation of the prior restriction and that the proceedings resulting in its adoption so show. But, assuming that this is true, the situation is not changed; for the re-enactment did no more than to put into express words that which, according to repeated decisions of this court, was implied before. Mercantile Nat. Bank v. New York, *supra,* where the terms and purpose of the restriction were much considered, it was distinctly held that the words 'other moneyed capital' must be taken as impliedly limited to capital employed in substantial competition with the business of national banks. In later cases that definition was accepted and given effect as if written into the restriction. It, of course, would exclude bonds, notes or other evidences of indebtedness when held merely as personal investments by individual citizens not engaged in the banking or investment business, for capital represented by this class of investments is not employed in substantial competition with the business of national banks. Thus in legal contemplation and practical effect the restriction was the same before re-enactment as after."

Referring in that opinion to the decision in Merchants' Nat. Bank v. Richmond, which seems to have

brought about the act of Congress amending the statute, the court said.

"But nothing was said in the opinion indicating that an enlargement was intended. On the contrary, it distinctly accepted the meaning adopted in prior decisions. The case was unusual in one respect. The defendants took the position that the congressional restriction was directed only against discrimination in favor of state banking associations, and they persisted in it to the extent of making no effort at the trial to controvert the evidence produced by the plaintiff to show that a relatively large amount of moneyed capital, taxed at a lower rate than the bank's shares, was employed in substantial competition with the business of the bank. When that position proved untenable by reason of settled rulings to the contrary, the case was left where the outcome turned on the evidence of competition produced by the plaintiff. That evidence was somewhat meager, but in the absence of any counter evidence was held sufficient, and the tax was accordingly pronounced invalid. If the outcome was open to criticism, it was not because any enlarged meaning was attributed to the term 'other moneyed capital,' but because the facts bearing on the question of competition were not sufficiently brought out at the trial and shown in the record."

In McFarland v. Georgetown National Bank, 208 Ky. 7, this court had before it the question of the constitutionality of the Kentucky act and there held that the evidence before the court did not show that the moneyed capital in the hands of individuals invested in bonds, notes and other evidences of indebtedness comes in competition with the national banks, and that although some of the witnesses so testified their conclusion was not sustained by the facts shown by all the testimony. So the only question presented here is whether the allegations of the petition, above quoted, show that the other moneyed capital referred to comes in competition with the national banks. The allegations of the petition are not the same as the allegations of the petition before the Supreme Court in the Anderson case. In that case it was alleged that the plaintiff's shares were subjected to a greater assessment and tax than is imposed upon moneyed capital in the hands of individual citizens in the

state employed and used in the same business. It was also averred that the exempted capital represented money at interest and other evidence of indebtedness such as normally entered into the business of banking. The state court sustained a demurrer to the petition. The Supreme Court reversed this ruling, holding that the allegations of the petition were sufficient upon general demurrer. But no question of fact on the evidence was presented there, and in the Virginia case the situation was practically the same as there; for the city had taken no evidence and the bank's evidence, standing alone, was sufficient to sustain the allegation of the petition. There is no allegation in this petition that the intangible property of others is used in competition with the business of the plaintiff bank, or that the business carried on by these individuals or corporations is done in competition with the bank. The ordinary business of banks is the receiving of deposits, the lending of money and the discounting of commercial paper. Unless so used, other capital does not come in competition with them.

The holding of investments is not competition with the plaintiff bank. Mere personal investments may, under the statute, be exempted. There is no allegation that the individuals or other corporations referred to in the petition are engaged in or do any business in competition with plaintiff or other national banks or that their moneyed capital is so used. To come within the federal inhibition there must be a real competition with the national bank and a substantial part of the capital must be so used.

On the return of the case to the circuit court the demurrer will be sustained and the plaintiff will be allowed to amend its petition.

Judgment reversed and cause remanded for further proceedings consistent herewith.